## SUPREME COURT.

JOSEPH L. SCOFIELD and another, as executors, &c., agt. LEWIS M. ST. JOHN and others.

*Legacy to executors in addition to commission — Death of executor before probate of will — Claim to legacy by his representatives, when allowed.*

The testatrix, by her will, gave $1,000 to each of her executors, "in addition to the commissions or allowances they would be entitled to by law," as such executors. After the will had been offered for probate, but before it was actually proved, one of the executors named therein died.

*Held*, that the deceased executor having accepted the trust and performed acts which showed an intention to assume all the responsibilities and duties of the office, it is sufficient to entitle his representatives to the legacy, although they might not have a legal claim for commissions.

The testatrix directed that $8,000 be applied in the purchase of a house and lot in the city of New York, the use of which she gave to her housekeeper during life, and on her death the house to go to the niece of testatrix.

*Held*, that the clause is valid, and not void as being a naked and inactive trust, as, if the duties imposed are in the nature of a trust, they are not wholly inactive.

*Special Term, June*, 1882.

*F. G. McDonald*, for plaintiff.

*A. K. Wagner*, for defendant Clarke.

*James O. Clarke*, for administrator of deceased.

*Henry Parsons*, for residuary legatees.

VAN VORST, J.— By her last will and testament, the testatrix, Louisiana, St. John, gave to each of the executors

Scofield agt. St. John.

thereof, the sum of $1,000 " in addition to the commission or allowances they would be entitled to by law " as such executors. The testatrix died on the 22d day of July, 1879, but her will was not admitted to probate until the 17th day of March, 1880. After the will had been offered for probate, but before it was actually proven, Harvey A. Sackett, one of the executors named therein, died, and a claim is now made by the representative of his estate for the payment of this legacy of $1,000 given to each executor. This is objected to by the residuary legatees.

Cases with facts somewhat kindred to the above have frequently arisen, and sometimes the claim on behalf of the representatives of a deceased executor have been sustained, and at other times rejected. There is, in fact, an apparent conflict in the cases.

It is said in *Roper on Legacies*, 780, "that if executors die before taking on themselves the trust, the condition upon which the legacies are given not being performed, they cannot be claimed." And in *Williams on Executors*, 1394, it is said, "if the legatee prove the will with an intention to act under it, that will be a sufficient performance of the condition, or if he unequivocally manifest an intention to act in the executorship, as by giving directions about the funeral of the testator, and be prevented by death from further entering upon his office, that will also be a performance of the condition." The latter view is clearly sustained by the case of *Harrison* agt. *Rowley* (4 *Vesey*, 215).

*In re Hawkins' Trust* (33 *Beav.*, 570), where the bequest to the executor was "for his trouble," it was held not to be payable, the executor having been prevented by severe illness from proving the will, and from ever acting.

The cases in which gifts to executors have been upheld although they have not acted as such, rest upon the ground that the gifts were not made to them strictly as such, or conditionally. Thus *In re Derby* (3 *D. F. & J.*, 350) where the legacy was " to my friend T. S. of M., banker's clerk, and one

of the executors of this my will," the gift was held to be unconditional (*Burgess* agt. *Burgess*, 1 *Coll.*, 367 ; *Bubb* agt. *Yelverton*, 13 *L. R.*, 131). But where the gift is made to the executors strictly as such, and they manifest no intention to act, and in fact omit wholly to act or renounce, they cannot take the gift (*Calvert* agt. *Sabbon*, 4 *Beav.*, 222 ; *Morris* agt. *Kent*, 2 *Edw.*, 175 ; *Redfield on Wills* [2d ed.], 561).

In *Slanery* agt. *Watney* (2 *Eq. L. R.*, 418) one of the executors never in any manner acted in the execution of the will, and the court held that " the bequest was clearly annexed to the office, and therefore the executor and trustee who never acted is not entitled."

In *Lewis* agt. *Matthews* (8 *Eq. L. R.*, 277) an executor to whom a legacy was left "for his trouble," being in Australia at the death of the testator, sent a power of attorney under which another person administered the estate, the executor died without proving the will. It was held that the executor had sufficiently shown his intention to act under the trusts of the will to entitle his representatives to the legacy, and that " it was not absolutely necessary to prove a will to entitle a person to a legacy as executor."

I think I have sufficiently noticed the cases upon this subject to indicate the principle by which they are controlled. The disposition of the court is to uphold the gift, when it can be plainly seen that the legacy was not made to the executor strictly as such, though he has not acted or shown a disposition to do so. And in the cases where the gift was not absolute, but conditional, to uphold the same, if the executor has manifested an unequivocal intention to act, and has done all that he could in the direction of accepting the office and the trusts, and has been prevented by death from fully clothing himself with all the power needed through an actual probate of the will.

An executor can legally perform certain acts in his office as such before probate of the will. He can present the will for probate ; he can provide for the expenses of the funeral

Scofield agt. St. John.

of the testator ; he may take needed steps for the preservation of the property (3 *Red. on Wills* [3*d ed.*], 21).

In the case before us the executor showed a clear intention to fully accept the office. He was present at the funeral, and accompanied the remains from New York city to the place of burial in the western part of the state. He informed himself of the nature of the trusts by an examination of the will and making a copy thereof. Immediately after the funeral he proceeded to an examination into the condition of the property of the estate, and conferred with the other executors in respect thereto. He joined in offering the will for probate in the surrogate's court, and when objections were made he conferred with the other executors in respect to the selection of a proper person as receiver during the pendency of the proceedings while the objections were under consideration. He changed his business matters to give attention to the will and its purposes. He made efforts to secure a withdrawal of the objections, so that the will might be proved, and expressed a determination to accept the office and the trusts. He incurred expense and loss of time in going from his residence in New Jersey to the city of New York, on several occasions, in respect to the estate and in virtue of his appointment as executor under the will.

There is not the shadow of a doubt but that he intended to qualify, and that but for the delay in the probate he would, before his death, have taken every step needed to exercise the office fully. Nor is there any doubt but that he was acting until his death as best he could under the trusts of the will.

And in order to entitle his representatives to take this legacy the deceased executor, under the facts, must be considered to have done all that in good faith he intended to do in the direction of fully accepting the trusts.

It is urged, however, that the legacies could only be taken by such of the executors as were entitled to legal commissions, and that a failure to earn the commissions would of itself disentitle the person so failing to the legacy.

Scofield agt. St. John.

I am not prepared to place so narrow a construction upon this legacy. The gift is independent of the commission and in addition thereto. It does not necessarily follow that the condition to receiving the legacy is a lawful claim to commissions. But otherwise I conclude that an acceptance of the trust, and the performance of acts which clearly show an intention to assume all the responsibilities and duties of the office, would be sufficient to entitle the representatives of the deceased executor to the legacy, although they might not have a legal claim for commission.

Objections are also made by the residuary legatees to the following clause of the will:

"Four or eight thousand dollars to be applied in the purchase of a house and lot in the city of New York, the use of which I give and bequeath unto my said housekeeper, Mrs. Sophia Clarke, for and during the term of her natural life, provided that she reconvey to my executors a certain lot of land situate at Yonkers, Westchester county, N. Y., which I have heretofore conveyed to her; and on the death of said Sophia Clarke, the said house, so used by her, is to go and be conveyed to my niece Olive St. John, absolutely and forever."

It is argued that this clause creates trusts not allowed by law. That it is a naked and inactive trust, and that the whole provision is absolutely void.

I cannot adopt that conclusion. It may well be that the testatrix could have accomplished her good intentions towards her housekeeper in a simpler way, but for that reason the gift should not fail. Had she purchased a dwelling-house in her lifetime, suitable as a residence for her housekeeper, she could clearly, by her will, have given to her the use of it for life; and I fail to see why she cannot empower her executors to apply her means, to the extent indicated, in the purchase of a dwelling to be used by the beneficiary for life.

If the duties imposed are in the nature of a trust, they are not wholy inactive. The property purchased must be pre-

served that the gift over should not fail. And everything to that end must be accomplished by the executors. Before the beneficiary can enjoy the gift, the executors must secure and hold for the estate the property, the conveyance of which is made as a condition to the use and enjoyment of the dwelling house by Mrs. Clarke.

The testatrix could have directed the investment of the amount named in bonds or other security for the use of the beneficiary for life. That the direction is for a more secure investment in land for the same purpose, cannot be radically defective.

In *White* agt. *Howard* (46 *N. Y.*, 144), the executors were directed to invest moneys of the testator in lands in the state of New York; but although many objections were made in that case, none seems to have been interposed on that account.

In *Leggett* agt. *Perkins* (2 *N. Y.*, 297), the executors were authorized to invest in real estate for the use of the daughter of the testator, and the authority was sustained (*Leggett* agt. *Hunter*, 19 *N. Y.*, 457).

In the leading case of *Hawley* agt. *James* (16 *Wend.*, 269), to which my attention is called, the whole trust was adjudged to be void. As a matter of course the power to invest in land fell with the trust, which for other reasons was invalid in its inception.

I am of opinion that the clause of the will in question is valid, and should be carried out as the testatrix has directed, and that a sum not exceeding $8,000 should be used for the purchase of the dwelling-house and lot, to be used by Mrs. Clarke for life, and after her death it will go to Olive St. John in fee.

Findings of fact and conclusions of law, with a decree, should be prepared by the plaintiffs' attorneys, and served upon the attorneys for the other parties, with a notice of settlement before me of two days.